UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RYAN D. RUSSELL, SR.       CIVIL ACTION NO. 09-cv-2139

VERSUS      JUDGE HICKS

LYNN COOPER, WARDEN      MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Ryan Russell, Sr. ("Petitioner") shot his stepfather in the head twice with a .22 rifle, killing him, after what Petitioner said was a heated argument and an attempt by the victim to attack Petitioner with a machete. Petitioner was charged with second degree murder, but a Red River Parish jury convicted him of the lesser offense of manslaughter. Petitioner pursued a direct appeal. State v. Russell, 966 So.2d 154 (La. App. 2d Cir. 2007), writ denied, 977 So. 2d 897 (La. 2008). Petitioner also pursued a post-conviction application, but the issues he presents in this federal petition for habeas corpus relief were exhausted during the direct appeal process.

The autopsy of the victim was performed by Dr. George McCormick, who died before trial. The State was allowed to introduce McCormick's autopsy report into evidence. Petitioner seeks habeas relief on the grounds that (1) La. C. Cr. P. art. 105, which allows admission of a coroner's report, violates the Confrontation Clause, (2) the trial court erred in admitting the autopsy report into evidence, and (3) the trial court erred in allowing forensic

pathologist Dr. Peretti to give expert testimony based on the autopsy report. Petitioner originally presented a claim that the State failed to prove the killing was not justified, but he withdrew that claim after it was pointed out he did not exhaust his state court remedies with respect to it. Doc. 6. The remaining claims are ready for resolution. For the reasons that follow, it is recommended that the petition be denied.

**Facts**

Petitioner met John Shoebroek ("John") in Shreveport when John offered him a job with his drywall business. Petitioner later introduced John to Petitioner's mother. The couple married and made a home near Coushatta. Living with them was Petitioner's young daughter, Halie, who they essentially raised from infancy. In the months before the killing, Petitioner and his 8-year-old son Ryan, Jr., also lived at the house.

Petitioner's mother, a few months before the killing, alerted Petitioner to bookmarks on John's computer for websites that had titles strongly suggestive that they featured child pornography. Petitioner confronted John, who attributed it to a computer glitch of some sort. Petitioner deleted the bookmarks, but he discovered the same or similar bookmarks were back several weeks later. Petitioner's mother testified that John often used the computer in the bedroom with the door locked. If she knocked to gain entry, he would let her in, but the screen would be blank. She was also concerned about John's purchase of expensive sex toys in which she had no interest.

Petitioner testified that his relationship with John began to change after he confronted him about the computer. John once masturbated openly in front of Petitioner and invited him to engage in sex. John had slept in Halie's room on the bottom bunk of her bunk bed for a while, but he stopped doing so after Halie once saw him exposed. Because of this and the other events, Petitioner was concerned that John may have engaged in inappropriate behavior with Halie. Petitioner talked to his daughter about it, but she said nothing improper had happened.

Petitioner's suspicions continued to grow. One day, while his mother was at work in Shreveport, and the two children were watching a movie, Petitioner went outside to a shed where John was doing some work and again confronted him about the pornography and strange behavior. Petitioner testified that he told John he did not want him around his children anymore. John reportedly began yelling and asking Petitioner who he thought he was trying to run things, and he pulled a machete that he kept in the shed. Petitioner said he responded by grabbing a .22 semi-automatic rifle that was nearby and instinctively shot John twice in the head.

Petitioner, who estimated he had drunk five or six beers at that point, said he freaked out and was afraid to call the police. Instead, he dragged the body to a nearby wooded area so the children would not see it. He returned later that night and buried the body in a shallow grave. When his mother came home and asked about John, Petitioner said that they had fought and he told John to leave. Petitioner's mother testified that it was not unusual for

John to leave for up to three days at a time, but his truck and other belongings were all still at the house. She eventually became concerned and contacted law enforcement. She also called another one of her sons, who is a half-brother to Petitioner. He came to the house and began searching the property. He asked a neighbor if he had seen anything strange or heard gunshots. The neighbor said the only thing he had noticed were some buzzards landing in a nearby clearing in the woods. An investigation of the area found John's cell phone case, and Deputy Tracy Scott was summoned to the scene. The body was found soon afterward.

Petitioner, who had recently been arrested on unrelated charges, was questioned by Deputy Scott. Petitioner waived his Miranda rights and gave oral and written statements. He admitted that he shot John twice and killed him, but he claimed that it had been in self defense.

Dr. Frank Peretti, a forensic pathologist, testified as an expert for the State. He did not see the body, but he reviewed Dr. McCormick's autopsy report and photographs of the body to prepare for his testimony. He testified that the bullet wound above the ear was, based on the type of weapon and the absence of stippling or gunpowder residue, fired from at least two feet away. Dr. Peretti described the other wound, to the forehead, as a contact wound, a conclusion he based on the soot on the skin and in the underlying scalp tissue and skull bone. He said a contact wound is one where the barrel of the rifle was firmly against the skin. The soot on that wound was visible in the photographs. Dr. Peretti said he could

not tell which wound was made first. The brain was too decomposed to trace the path of the bullets.

**Article 105 and Admission of the Autopsy Report**

Louisiana Code of Criminal Procedure Article 105 provides that in a case involving the apparent commission of a crime the coroner shall make a written report of his investigation to the district attorney. In homicide cases, the report shall certify the cause of death. This report is in addition to the proces verbal of the autopsy required by Louisiana statute. The article provides, relevant here, that: "A coroner's report and a proces verbal of an autopsy shall be competent evidence of death and the cause thereof, but not of any other fact." The article "does not authorize admission of coroner's reports to prove any facts other than death and cause of death." State v. Beaner, 974 So.2d 667, 684 (La. App. 2d Cir. 2007), citing State v. Monroe, 345 So.2d 1185, 1187 (La. 1977).

Defense counsel filed a pretrial motion in limine to exclude the autopsy report. Tr. 57. He acknowledged Article 105 and related jurisprudence but argued that the recently decided Crawford v. Washington, 124 S.Ct. 1354 (2004) nonetheless prohibited the introduction of the autopsy report and its conclusions because Dr. McCormick (by then deceased) was unavailable to testify and Petitioner would not have the opportunity to cross-examine him about statements in the report. The trial judge denied the motion based on a determination that the autopsy report was not testimonial in nature. Tr. 155.

Defense counsel filed a second motion in limine (Tr. 176) and argued that it had been discovered since Dr. McCormick's death that he often did not personally perform autopsies, casting doubt on the report's reliability and undermining any argument the report met the requirements of the business record exception to the hearsay rule. The trial court held a hearing on the motion and heard testimony from Lisa Hayes, Dr. McCormick's former assistant, who was present when the autopsy at issue was performed. Hayes testified that she specifically recalled this autopsy because the body had decomposed significantly in the several days that it had been buried. The body was not touched until Dr. McCormick could get to the lab a couple of days later. The body was first x-rayed and then examined. Hayes said that Dr. McCormick was personally involved in this autopsy, but she admitted that in the later years of his career he was not always present and often did not arrive at work until 5:00 or 6:00 o'clock in the evening after all of the incisions had been made and organs had been pulled and weighed. Bullets were sometimes removed by assistants. Ms. Hayes admitted to often signing Dr. McCormick's name to death certificates. Tr. 302-37.

The trial court found Ms. Hayes' testimony to be very convincing regarding her remembering the case and Dr. McCormick supervising the details of the autopsy. The court also found that some of the procedures in the office were very disturbing but, in the end, could not find that anything was done wrong that would affect the outcome of this particularly autopsy. The motion in limine was denied. Tr. 205. (The autopsy report is in the record at Tr. 205(A).)

Crawford held that out-of-court statements by a witness that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements might be deemed reliable. Thus, a wife's out-of-court statements to police officers about her husband stabbing her violated the Confrontation Clause. Crawford did not spell out a comprehensive definition of what would be testimonial but said that at a minimum it included prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and police interrogations. The court later held in Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009) that certificates of analysis sworn by analysts at a state laboratory, attesting that a substance analyzed was cocaine, were affidavits within the core class of testimonial statements covered by the Confrontation Clause.

Petitioner's argument places great weight on Melendez-Diaz, but there are two reasons it does not entitle him to relief. First, habeas relief is not permitted with respect to any claim that was adjudicated on the merits in state court unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). The latest potential state court adjudication on the merits of Petitioner's Confrontation Clause claim occurred on direct appeal when the Supreme Court of Louisiana denied a writ application in March 2008. Melendez-Diaz was not decided until June 2009, so its holding is not applicable to the habeas analysis. Greene v. Fisher, 132 S.Ct. 38 (2011).

There is a second obstacle to habeas relief even if it is assumed that the state court's decision was an objectively unreasonable application of Crawford as it stood at the time of the state court decision. A Confrontation Clause violation is subject to a harmless error analysis. See Bullcoming v. New Mexico, 131 S.Ct. 2705, n.11 (2011) (finding Confrontation Clause error and noting that "nothing in this opinion impedes a harmless-error inquiry on remand"); U.S. v. Harper, 527 F.3d 396, 400-01 n.3 (5th Cir. 2008). A federal habeas court must assess the prejudicial impact of constitutional error in a state court criminal trial under the "substantial and injurious effect" standard of Brecht v. Abrahamson, 113 S.Ct. 1710 (1993). See Fry v. Pliler, 127 S.Ct. 2321 (2007). Under Brecht, a federal court may grant habeas relief on account of constitutional error only if the error had a substantial and injurious effect or influence in determining the jury's verdict. The petitioner should prevail under this standard when the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of the error. Horn v. Quarterman, 508 F.3d 306, 322 n.24 (5th Cir. 2007).

The facts surrounding the use of the autopsy report at trial demonstrate that its admission was harmless; the jury never saw it. Before Dr. Peretti testified, defense counsel renewed his objection to the introduction of the autopsy for the reasons argued in the two pretrial motions. At the end of the discussion, defense counsel asked the prosecutor: "And does that have to be in evidence, Mr. Bethard, or are you just prefer that it be in evidence?" The prosecutor answered that he preferred that it be in evidence. Defense counsel noted:

"It's not like the jury is going to be reading it this afternoon." The exhibit was admitted (without an assigned number). Tr. 299, 448-50. There is no indication the autopsy report was published to the jury when it was admitted. Dr. Peretti said the autopsy report and photographs served as information on which he based his opinions, but there is no indication the autopsy report was read or shown to the jury during Dr. Peretti's testimony.

After the jury began to deliberate, they indicated difficulty reaching a verdict. The attorneys agreed to permit them a written copy of the jury instructions. The judge also stated that the court would consider providing any evidence that the jury felt might be beneficial in helping it reach a verdict. The foreman asked for the written statement that Petitioner gave Deputy Scott.

Louisiana Code of Criminal Procedure article 793 provides that a juror must rely upon his memory in reaching a verdict and "shall not be permitted to refer to notes or to have access to any written evidence." Upon the request of a juror and in the discretion of the court, the jury may take into deliberations an object or document received in evidence when a physical examination is required to enable the jury to arrive at a verdict. The trial judge has no discretion to make exceptions, and "the jury's review of written evidence for its verbal contents in violation of La. Code Crim. P. art. 793 constitutes reversible error." State v. Adams, 550 So.2d 595, 599 (La. 1989). The parties may agree to waive the rule, but "[s]uch an agreement must be in clear express language and must be reflected in the record." Id.

The trial judge received the request and informed the lawyers that it was obviously prohibited by the Article 793 but was something that could be waived. The parties did waive the provision and allowed the jury to see Petitioner's written statement. The jury then returned a verdict of guilty of manslaughter. Tr. 552-56. There is no indication the jury requested or received a copy of the autopsy report. The state appellate court found the report was merely cumulative evidence of death and cause of death, making its admission harmless.

It is perhaps an interesting academic discussion whether Article 105 is constitutional and whether the admission of an autopsy report pursuant to that article might run afoul of Crawford and the Confrontation Clause, but the issue need not be decided in this case. The report may have technically been admitted as an exhibit, but there is no indication that any juror ever held or saw the report or was read any statements from the report. There was also no dispute that (1) John was dead and (2) the cause of his death was Petitioner firing two bullets into John's head. The only issue was whether the killing was second degree murder, manslaughter, or done in self-defense. Under these circumstances, any possible Crawford error could not have had a substantial and injurious effect or influence on the jury's verdict. Habeas relief is not available on this claim.

**Dr. Peretti's Testimony**

Petitioner argues that Dr. Peretti's testimony should not have been allowed because it was based on the autopsy report that Petitioner attacks as hearsay and unreliable. The state appellate court responded that Dr. Peretti's testimony was his own expert medical opinion

as to John's death and its cause. As an expert, he could testify to opinions formed based on information obtained from others. State v. Russell, 966 So.2d at 16-17. Louisiana Code of Evidence article 703 states that an expert may base his opinion on facts or data made known to him at or before the hearing. "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Petitioner's argument on this issue is presented as a constitutional one, but it is really an argument that the autopsy report was unreliable because of Dr. McCormick's practices, and Dr. Peretti should not have been allowed to rely on such unreliable evidence to form his opinion. The trial court conducted a thorough pretrial hearing on the issue and reached a reasonable resolution based on the evidence presented.

Petitioner's argument does not permit habeas relief because federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules or even consider it relevant whether state evidentiary rules were satisfied. Only federal constitutional errors that satisfy the demanding standards of 28 U.S.C. § 2254 merit habeas relief. The Due Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair. Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991).

Page 11 of 13

The evidence must have had a substantial and injurious effect or influence in determining the jury's verdict. Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

Once again, that John was dead and his cause of death were not at issue. The only significant information the prosecution got from Dr. Peretti (that was not already established) was his opinion that one of the shots had been a contact wound and the other was not. The prosecution argued that it was unreasonable to believe that a man armed with a machete would let you place the barrel of a rifle against his forehead long enough to shoot him. Tr. 527-28. But this was but one of the many points the State made about the inconsistency of Petitioner's version of the events with the testimony of other witnesses and what was found at the crime scene. The undersigned is persuaded that the state courts reasonably applied the Louisiana evidentiary rules to allow Dr. Peretti's testimony. Even if it were error, the admission did not render the trial fundamentally unfair given its limited role in the overall body of evidence.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of March, 2013.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE